UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EVONE L. HARDY

        Plaintiff,

  v.               **DECISION AND ORDER**
                         12-CV-112S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

1. Plaintiff, Evone Hardy, challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Hardy, whose father received disability insurance benefits, alleges that she has been disabled since before she reached the age of 22, specifically February 1, 1969. She alleges that mental retardation[1] and the effects of a gunshot wound in her knee render her unable to work. She therefore asserts that she is entitled to childhood disability benefits under the Act. See 20 C.F.R. § 404.350 (under certain circumstances applicants "are entitled to child's benefits on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died").

2. Hardy, who already receives supplemental security insurance ("SSI") benefits, filed an application for childhood disability benefits under Title II of the Act on September 5, 2008. The Commissioner of Social Security ("Commissioner") denied her

---

[1]The Social Security Administration ("SSA") regulations still speak of "mental retardation." See 20 C.F.R. Pt. 404. "However, because the term is 'offensive to many persons,' the SSA is transitioning to using the term 'intellectual disability' to represent the same concept." Talavera v. Astrue, 697 F.3d 145, 148 n.2 (2d Cir. 2012).

application, and as result, she requested an administrative hearing. She received that hearing before ALJ Timothy M. McGuan on January 27, 2011. The ALJ considered the case *de novo*, and on April 6, 2011, he issued a decision denying Hardy's application for benefits. Hardy filed a request for review with the Appeals Council, but the Council denied that request, prompting her to file the current civil action on February 8, 2012, challenging Defendant's final decision.[2]

3. On July 16, 2012, the Commissioner and Hardy both filed motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Briefing on the motions concluded August 27, 2012, at which time this Court took them under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is denied and Hardy's motion is granted.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[2]The ALJ's April 6, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable

to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520. The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

8. To qualify for childhood disability benefits, the claimant must demonstrate that she "was under a disability (as defined in section 423(d) of this title) which began before [s]he attained the age of 22." 42 U.S.C. § 402((d)(1)(B) (parenthesis in original).

9. Here, the ALJ found that while Hardy has not engaged in substantial gainful activity since her alleged onset date, February 1, 1969, she is not entitled to benefits because "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment" before she reached the age of 22. (R. 20.)[3] Finding no disability, ALJ McGuan did not reach the remaining steps in the evaluation process.

10. Hardy argues, *inter alia*, that the ALJ erred by failing to develop the record. Indeed, "[e]ven when a claimant is represented by counsel, it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature

---

[3]Citations to the underlying administrative record are designated "R."

4

of a benefits proceeding.'" Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009)). That duty extends to "[d]ecisions by any governmental or nongovernmental agency about whether [the claimant is] disabled." 20 C.F.R. § 404.1512. Here, there is no dispute that at the time of the hearing Hardy had been receiving SSI benefits for approximately three years. (R. 31.) Yet, despite the Social Security Administration's previous determination that she suffered from a disability that prevented her from working, nothing on the record indicates that the ALJ attempted to obtain Hardy's SSI records. These records are of particular importance here because this Court agrees with the ALJ that there is a serious lack of evidence substantiating her current disability claim. The previous claim file might shed light on the SSI determination and provide evidence tending to show that Hardy is entitled to disability benefits. ALJ McGuan recognized the apparent disparity between the lack evidence supporting Hardy's claim and the SSA's decision to award benefits. At the hearing he confronted Hardy's representative, "I don't know how she got SSI without any medical evidence. That's beyond me." (R. 32.) But he apparently took no action to resolve this conflict.

The confusion is not rectified by the Commissioner in his motion before this Court. The Commissioner does not, for example, contend that the ALJ in fact sought these records, or that the ALJ was privy to them when he made his decision. Nor does the Commissioner argue that the SSI records do not contain medical evidence. Instead, the Commissioner responds only by arguing that the November 15, 2007 SSI determination is not relevant because the disability onset date for those benefits was August 1, 2007, which, considering Hardy's current age, is 18 years after the relevant time period in this

5

case. It is true that Hardy must demonstrate the existence of a disability before the age of 22. But Hardy primarily bases her disability claim on a gunshot wound, which she suffered at the age of two, and mental retardation, which remains fairly constant throughout one's life. See Talavera v. Astrue, 697 F.3d 145, 152 (2d Cir. 2012) (adopting standard that "presum[es] relative stability in a claimant's cognitive functioning over time"). In fact, it appears from her testimony that she believes she was awarded SSI benefits because of complications from the gunshot wound. (R. 35.) The later onset date, therefore, does not necessarily foreclose the possibility that the SSI file could contain probative evidence of a disability from earlier in her life.

11. This Court is aware that several potential sources of information were explored – including Buffalo General Hospital, Children's Hospital of Buffalo, Erie County Medical Center, the Buffalo Board of Education, and Sisters of Charity Hospital – and that no relevant information was uncovered. It is also aware that ALJ McGuan provided Hardy and her counsel three extra weeks to supplement the record after the hearing. But despite these laudable efforts, there remains doubt about what, if any, information the old claim file contains. As then-District Judge Sotomayor wrote while addressing the same issue, "Until there has been an attempt to obtain these records, neither the ALJ nor the Court will ever know if plaintiff's complaint can be better documented." Mann v. Chater, No. 95 CIV. 2997 (SS)), 1997 WL 363592, at *8 (S.D.N.Y. June 30, 1997). Remand, therefore, is appropriate because filing this gap in the record would "help to assure the proper disposition of [Hardy's] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

12. On remand, if it has not already, the SSA shall seek out Hardy's prior claim file to determine whether it contains any probative evidence.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that this case is remanded to the Commissioner of Social Security for proceedings consistent with this Decision and Order.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: February 25, 2013
      Buffalo, New York

    /s/Wiliam M. Skretny
    WILLIAM M. SKRETNY
    Chief Judge
    United States District Court